**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN URBANOWSKI, individually, and URB, INC., an Illinois corporation, and XEZ, INC., an Illinois corporation,<br><br>Defendants. | ) | Case No. 16-cv-4010 |

## COMPLAINT

Plaintiff, HomeVestors of America, Inc. ("HomeVestors"), through its attorneys, complains of Defendants Brian Urbanowski ("Urbanowski"), URB, Inc. ("URB"), and XEZ, Inc. ("XEZ"), (collectively referred to hereinafter as "Defendants") as follows:

### I. PARTIES

1. HomeVestors is a Delaware corporation with its principal place of business at 6500 Greenville Avenue, Suite 400, Dallas, Texas 75206.

2. On information and belief, Urbanowski is an individual residing at 1600 W Sherwin Ave., Chicago, Illinois 60626. Urbanowski is a Principal and Officer of URB and XEZ, real estate businesses in Illinois (the "Businesses"). On information and belief, Urbanowski is the moving force behind the infringing activities complained of herein and has an interest in the financial outcome of the Businesses and their activities.

3. URB is an Illinois corporation with a business address at 7250 N. Cicero Ave., #100, Lincolnwood, Illinois 60712 and can be served with process through its registered agent, Brian Urbanowski, at the registered agent address, which is the same as the business address.

4. XEZ is an Illinois corporation with a business address at 7250 N. Cicero Ave., #100, Lincolnwood, Illinois 60712 and can be served with process through its registered agent, Brian Urbanowski, at the registered agent address, which is the same as the business address.

5. Urbanowski and URB are the registrants of the domain <urbchicago.com> (the ".Com Domain"), at which location Urbanowski and URB operate urbchicago.com (the ".Com Website"). The .Com Domain and the .Com Website are available to and directed at residents of this District.

6. Urbanowski and XEZ are the registrants of the domain <urbonline.net> (the ".Net Domain"), at which location Urbanowski and XEZ operate urbonline.net (the ".Net Website"). The .Net Domain and the .Net Website are available to and directed at residents of this District.

## II. Nature of The Action

7. This is an action for trademark infringement under federal law in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act), unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) (Section 43(a)(1)(A) of the Lanham Act), as well as common law trademark, unfair competition, and infringement and unfair trade practices under the Illinois Uniform Deceptive Trademark Practices Act (815 ILCS § 510/1 *et. seq.*).

8. HomeVestors brings this action for trademark infringement, unfair trade practices, and related offenses, arising from Defendants' infringing uses of marks and phrases identical to and confusingly similar to HomeVestors' federally registered trademarks.

## III. Jurisdiction and Venue

9. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under 15 U.S.C., Chapter 22 – Trademarks), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1367 (supplemental jurisdiction).

10. The Court has personal jurisdiction over Defendants because the acts that are the subject of HomeVestors' claims, including trademark infringement, unfair competition, and related acts, were committed by Defendants in the State of Illinois in this District. Defendants conduct business primarily through the .Com Website and the .Net Website (the "Infringing Websites"), which improperly use HomeVestors' registered trademarks. The Websites are active sites allowing customers to contact Defendants and submit information about homes the customers wish to sell, directed at residents of Illinois and this District. Defendants are making commercial use of HomeVestors' registered trademarks in Illinois and this District. As a result, Defendants are doing business in this District and committing acts of infringement, unfair competition, and other wrongs in this District. In addition, this Court has general jurisdiction over each of the Defendants in that they each reside in this District and have their principal place of business in Illinois.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this District and are residents of Illinois. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this District.

## IV. Factual Background

**A. HomeVestors' business.**

12. HomeVestors was founded and began franchising its business in 1996. HomeVestors has over 600 franchisees across 44 states that operate under strict codes and systems to ensure high ethical standards and responsible business practices. Over the years, HomeVestors and its franchisees have bought more than 60,000 houses.

13. HomeVestors is known as the WE BUY UGLY HOUSES® people and is the number one buyer of houses in the United States. HomeVestors franchisees buy homes that are difficult to sell and pay cash to owners in challenging situations. HomeVestors franchisees rehabilitate the houses and then sell or lease the homes. This process improves neighborhood aesthetics and provides opportunities for first-time homebuyers, other homebuyers, and renters.

14. HomeVestors offers low-cost franchising opportunities to investors seeking to enter the business. Its unique business model includes a proprietary software system used in evaluating the potential value of single-family homes for purchase and repair. HomeVestors and its franchisees also employ a mass advertising campaign based on high-impact billboards, nationwide television commercials, and widespread Internet advertising that has achieved nearly universal market awareness for HomeVestors' trademark portfolio, which is discussed in detail below. HomeVestors also utilizes a direct-selling program that assists franchisees in identifying buyers or investors who may already have a vested interest in improving the relevant neighborhoods.

15. HomeVestors has received numerous honors and awards. In 2015, HomeVestors was recognized as the 19th fastest growing franchise by Entrepreneur Magazine. In 2016, HomeVestors was recognized as number 91 in the Franchise 500 by Entrepreneur Magazine. Furthermore, in 2015, SMU Cox School of Business named HomeVestors as number 28 in the "Dallas 100" fastest-growing private companies based in Dallas. HomeVestors was the

only home buying franchise on each of those lists. Also in 2015, and for the tenth consecutive year, HomeVestors was named to Franchise Business Review's "Top 50 Franchises," a distinction awarded to franchisors with the highest level of franchisee satisfaction. HomeVestors has built substantial goodwill in its name and business practices among both consumers and its franchisees.

**B.     HomeVestors owns substantial trademark rights through its significant use in commerce of its trademarks.**

16.     HomeVestors possesses extensive valuable rights in its intellectual property, including a family of U.S. trademarks listed in the chart attached hereto as Exhibit A ("HomeVestors' Registered Marks").

17.     HomeVestors owns and has used the Ugly Houses Marks (defined below) since at least as early as 2000 and has built substantial brand-name recognition through the use of these marks. Through continuous and exclusive use in commerce, HomeVestors' Ugly Houses Marks have achieved incontestable status. Specifically, the following marks have become widely recognized in the industry, and HomeVestors has built significant goodwill in those marks: WE BUY UGLY HOUSES® & Design (Reg. No. 2,761,385); WE BUY UGLY HOUSES® (Reg. No. 3,099,814); COMPRAMOS CASAS FEAS® (Reg. No. 2,988,337); COMPRAMOS CASAS FEAS® (Reg. No. 2,982,363); WE BUY UGLY HOUSES® (Reg. No. 2,999,705); WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN® & Design (Reg. No. 2,827,136); UGLY'S OK® Stylized (Reg. NO. 2,797,429); UGLY'S OK® (Reg. No. 2,794,480); WE SELL LUVLY HOUSES.COM® (Reg. No. 3,658,442); THE UGLIEST HOUSE OF THE YEAR® (Reg. No. 3,641,362); THE UGLIEST HOUSE OF THE YEAR® & Design (Reg. No. 3,641,361); THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,350,752); WE BUY THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,307,918); SOLUTIONS FOR UGLY SITUATIONS®

(Reg. No. 3,188,593); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,185,390); UG BUYS UGLY HOUSES® (Reg. No. 2,999,978); and UG BUYS UGLY HOUSES® (Reg. No. 2,935,916). Registration Nos. 2,761,385; 3,099,814; 2,988,337; 2,982,363; 2,999,705; 2,827,136; 2,797,429; 2,794,480; 3,658,442; 3,641,362; 3,641,361; 3,350,752; 3,307,918; 3,188,593; 3,185,390; 2,999,978 and 2,935,916 are collectively referred to as the "Ugly Houses Marks."

18. Over the years, HomeVestors has spent significant amounts of time and resources in developing its brand and maintaining the goodwill it has built in its trademarks. HomeVestors and its network of franchisees have spent over $100 million on advertising over the course of the past 10 years, which includes advertising on the Internet, radio, television, magazines, and billboards seen throughout the country. The HomeVestors brand is readily and widely recognized in the industry and among the general public.

**C. Defendants Advertise for the Infringing Websites using the Ugly Houses Marks and confusingly similar phrases, thereby committing acts of infringement and unfair competition.**

19. On information and belief, Defendants control and operate the Infringing Websites. The Infringing Websites are direct competitors with HomeVestors and its franchisees. The Infringing Websites advertise the buying of houses that are difficult to sell and the selling of distressed properties to investors and rehabbers. Such advertising is directed to Illinois residents, including those located in this District.

20. Defendants use the Ugly Houses Marks in online advertising for the Infringing Websites, have used the Ugly Houses Marks within the Infringing Websites' text and source code, and are currently using HomeVestors' WE BUY UGLY HOUSES mark within the text of the .Net Website, and are using the Ugly Houses Marks and confusingly similar phrases within advertising

for the Infringing Websites. This unauthorized use of the Ugly Houses Marks results in acts of infringement and unfair competition.

21. HomeVestors contacted Urbanowski on numerous occasions, beginning in July 2015, regarding Defendants' infringing use of the Ugly Houses Marks. Attached hereto as Exhibit B is a true and correct copy of the letter dated July 13, 2015 from counsel for HomeVestors to Urbanowski with the certified mail proof of delivery and signature upon receipt by Urbanowski.

22. Despite multiple demands, Defendants continue to use the Ugly Houses Marks for the purpose of advertising and directing traffic to the Infringing Websites.

23. On or about July 8, 2015, the .Net Website contained the phrase "We Buy Ugly Houses" within text on the face of the website, and Defendants were using the Ugly Houses Marks and confusingly similar phrases within online advertisements directed to the Infringing Websites. Attached hereto as Exhibit C is a true and correct copy of images of the .Net Website and online advertisements showing a representative example of the type of infringement found.

24. On or about August 16, 2015, the .Com Website contained the phrases "We Buy Ugly Houses" in text on the face of the website. Attached hereto as Exhibit D is a true and correct copy of an image of the .Com Website showing the infringing use.

25. On or about October 5, 2015, Defendants used the phrase "We Buy Ugly Houses" and confusingly similar phrases to the Ugly Houses Marks within advertisements for the Infringing Websites in Pinterest, YouTube, Facebook, and within online advertisements at backpage.com and anuncio.com. Attached hereto as Exhibit E is a true and correct copy of images of online advertisements with infringing use directed to the Infringing Websites and Defendants' Businesses.

26. On or about January 13, 2016, the Infringing Websites contained the phrase "We Buy Ugly Houses" within text on the face of the websites. Defendants used the Ugly Houses Marks and/or confusingly similar phrases within social media and online advertisements directed to the Infringing Websites and Defendants' Businesses. Attached hereto as Exhibit F is a true and correct copy of images of the Infringing Websites and online advertisements showing a representative example of the infringing use.

27. As recently as March 2016, Defendants were using "We Buy Ugly Houses" within the .Net Website, and were repeatedly using the Ugly Houses Marks and/or confusingly similar phrases within social media and online advertising directed to the Infringing Websites and the Businesses. Attached hereto as Exhibit G is a true and correct copy of images of web pages showing a representative example of infringing use found in March 2016.

28. Since July 2015, counsel for HomeVestors has sent letters and emails to Defendants and made telephone calls, all requesting immediate cessation of all use of the Ugly Houses Marks. Although Urbanowski made modifications to the Infringing Websites and related social media accounts, Defendants have not ceased all use of the Ugly Houses Marks and continue to advertise using the Ugly Houses Marks and confusingly similar phrases. As a result, HomeVestors was forced to escalate this matter to litigation.

**D.    Unless Defendants are enjoined, HomeVestors will suffer irreparable harm for which it has no remedy at law.**

29. Unless Defendants are enjoined, HomeVestors will suffer irreparable harm. Defendants will continue to trade on the goodwill HomeVestors has built in its marks. Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs. Defendants will continue to use the trademark terms in which HomeVestors has built

substantial goodwill in advertising for Defendants' Businesses. Such use of the Ugly Houses Marks and confusingly similar phrases diverts business that otherwise would belong to HomeVestors and causes initial interest confusion. Moreover, HomeVestors has no ability to control the quality of the services provided by Defendants in conjunction with the Ugly Houses Marks, and therefore, is at risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

30. By way of example, if customers of Defendants experience inferior services, they will likely mistakenly attribute that bad experience to HomeVestors and its franchisees due to Defendants' adoption of the same marks. This is heightened by Defendants' strategy of providing the same or similar services to the same customer base using the same advertising channels in connection with the same marks. As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by HomeVestors through its investment of time, efforts, and advertising in the HomeVestors Registered Marks. Defendants are intentionally trading off the goodwill HomeVestors has built up in its marks over years of use and promotion.

## V. CLAIMS

**Count One – Trademark Infringement Under 15 U.S.C. § 1114 (Section 32 of the Lanham Act)**

31. HomeVestors repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

32. Defendants' aforesaid acts committed in the course of Internet commerce constitute willful and intentional trademark infringement of the Ugly Houses Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. As established by the registration for the

marks, the marks are protectable and enforceable against Defendants, HomeVestors is the owner of the marks, and HomeVestors is the senior user of the marks. Moreover, Defendants' actions have caused a likelihood of confusion and damage to HomeVestors. In particular, through the infringing use of the Ugly Houses Marks, Defendants are harming HomeVestors and diverting sales that would otherwise go to HomeVestors. Defendants' use of the Ugly Houses Marks is likely to cause confusion and mistake as to the source of Defendants' services.

33. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

34. Defendants' infringing acts have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to HomeVestors for which HomeVestors has no adequate remedy at law.

35. By reason of Defendants' acts and practices in violation of Section 32(1) of the Lanham Act, HomeVestors has suffered and will continue to suffer monetary damages in an undetermined amount as well as irreparable injury, including damage to its business, goodwill, reputation, and profits.

36. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its actual damages. Due to the exceptional nature of this case, HomeVestors also seeks its reasonable attorney's fees.

**Count Two – Unfair Competition Under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)**

37. HomeVestors repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

38. Defendants' aforesaid wrongful acts committed in the course of Interstate commerce constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

39. Defendants' use of HomeVestors' marks in advertising of Defendants' services constitutes a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with HomeVestors, or as to the origin, sponsorship, or approval of Defendants' services by HomeVestors.

40. Defendants' infringing acts committed in Internet commerce have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to HomeVestors for which HomeVestors has no adequate remedy at law.

41. By reason of Defendants' acts and practices in violation of Section 43(a) of the Lanham Act, HomeVestors has suffered and will continue to suffer monetary damages in an undetermined amount as well as irreparable injury, including damage to its business, goodwill, reputation, and profits.

42. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

43. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its damages. Due to the exceptional nature of this case, HomeVestors seeks its reasonable attorney's fees.

**Count Three – Trademark Infringement in Violation of Illinois Common Law**

44. HomeVestors repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45. As established above, HomeVestors is the senior user of its marks and enjoys priority over Defendants. HomeVestors' substantial use of these marks in commerce has resulted in the marks being protectable and enforceable. HomeVestors has established goodwill in connection with its business, the public associates this goodwill with HomeVestors' Ugly Houses Marks. Defendants' use in commerce of the Ugly Houses Marks and confusingly similar marks in connection with competing services constitute infringement of HomeVestors' common-law rights

to its marks. Defendants' use of the marks is likely to cause confusion or mistake as to the source of Defendants' services.

46. Defendants' wrongful acts constitute trademark infringement in violation of the common law of the State of Illinois.

47. Defendants' aforesaid wrongful acts are causing irreparable harm to HomeVestors' goodwill and will continue to irreparably harm HomeVestors absent an injunction restraining further infringing use by Defendants. In addition, HomeVstors has suffered monetary damages as a result of Defendants' wrongful acts.

48. Defendants have acted with knowledge of HomeVestor's common law rights and have intentionally and purposefully infringed these rights.

49. In accordance with Illinois law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword bidding or advertising, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

**Count Four – Unfair Competition under Illinois Common Law**

50. HomeVestors repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51. Defendants have engaged in commerce in the State of Illinois and this judicial district by marketing, offering to sell, and selling Defendants' competing services. Defendants

have advertised their services on their active websites. Defendants have competed unfairly in violation of Illinois law by misrepresenting or misleading the public to believe that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors.

52. Defendants' aforesaid infringing acts committed in Internet commerce have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to HomeVestors for which HomeVestors has no adequate remedy at law.

53. Defendants' aforesaid wrongful acts constitute unfair competition under the common law of the State of Illinois.

54. In accordance with Illinois law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

55. HomeVestors has been damaged by Defendants' actions. Under Illinois law, HomeVestors is entitled to recover its actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

**Count Five – Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/01 *et seq.*)**

56. HomeVestors repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57. This count is to remedy violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/01, *et seq*.

58. Defendants' unauthorized use of HomeVestors' Ugly Houses Marks has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendants' and HomeVestors' businesses, inasmuch as it gives rise to the incorrect belief that Defendants' Businesses have some connection with HomeVestors. Said acts constitute deceptive trade practices in the course of Defendants' Businesses in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

59. Defendants' wrongful activities have caused, and unless enjoined by this Court, will continue to cause, irreparable injury and other damage to HomeVestors business, reputation, and goodwill in its Ugly Houses Marks, for which HomeVestors has no adequate remedy at law.

## V. REQUEST FOR RELIEF

WHEREFORE, HOMEVESTORS OF AMERICA, INC., respectfully requests that this court enter an order providing for the following relief:

A. That Defendants have violated §§ 32(1) and 43(a) of the Lanham Act and the provisions of the Illinois Uniform Deceptive Trade Practices Act, and have committed acts of trademark infringement and unfair competition under Illinois common law;

B. That Defendants and their officers, members, agents, servants, employees, representatives, parents, subsidiaries, and related companies, and all others in active concert or participation with them, either directly or indirectly, be preliminarily and permanently enjoined and restrained in the United States from:

    i. Representing that Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by HomeVestors;

    ii. Using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services; and

    iii. Otherwise competing unfairly with HomeVestors or injuring its business reputation in any manner;

C. That Defendants and their officers, agents, servants, employees, franchisees, and all those persons in active concert or participation with them, be ordered to identify all third parties to whom Defendants have represented themselves to be the organization behind the Ugly Houses Marks or somehow sponsored by, approved by, affiliated with, or associated with HomeVestors and all third parties to whom Defendants have distributed any type of materials incorporating the Ugly Houses Marks;

D. That Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with them, be ordered to identify all other websites registered to or owned by Defendants containing the Ugly Houses Marks;

E. That Defendants be ordered to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the Ugly Houses Marks and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with HomeVestors;

F. In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the Ugly Houses Marks be surrendered for destruction;

G. In accordance with 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendants' profits from the aforesaid acts of unjust enrichment, trademark infringement, and unfair competition;

H. That HomeVestors be awarded monetary relief in an amount to be determined at trial, including without limitation Defendants' profits and damages sustained by HomeVestors;

I. That this is an exceptional case, and that HomeVestors be awarded its actual, treble, exemplary damages and reasonable attorneys' fees;

J. That HomeVestors be awarded costs of suit; and

K. That HomeVestors be awarded its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

L. Any such other relief as the Court deems just and appropriate, including an award of punitive and exemplary damages.

Dated: April 4, 2016                    Respectfully submitted,

**PEARNE & GORDON LLP**

*/s/ Michael P. Padden*
Michael P. Padden

2 N LaSalle Street, Suite 1200
Chicago, Illinois 60602
P. 216.301.2276
mpadden@pearne.com
**ATTORNEYS FOR PLAINTIFF
HOMEVESTORS OF AMERICA, INC.**

*/s/ Aaron D. Davidson*
Aaron D. Davidson
KLEMCHUK LLP
Campbell Centre II
8150 North Central Expressway, 10th Floor
Dallas, TX 75206
P. 214.367.6000
(Motion to appear pro hac vice pending)

*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
KLEMCHUK LLP
Campbell Centre II
8150 North Central Expressway, 10th Floor
Dallas, TX 75206
P. 214.367.6000
(Motion to appear pro hac vice pending)